Elizabeth WILCOX, Plaintiff,

v.

RICHMOND, FREDERICKSBURG & POTOMAC RAILROAD COMPANY et al., Defendants.

No. 65 Civ. 2690.

United States District Court
S. D. New York.

May 15, 1967.

Rehearing Denied June 28, 1967.

Burlingham, Underwood, Barron, Wright & White, New York City, for defendant Richmond, Fredericksburg & Potomac R. Co.; William M. Kimball, New York City, of counsel.

I. Arnold Ross, New York City, for plaintiff.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

FREDERICK van PELT BRYAN, District Court:

This is a diversity suit against the various defendant Railroads, including the Richmond, Fredericksburg & Potomac R.R. (Richmond), to recover for personal injuries allegedly suffered by plaintiff while she was a passenger on a train travelling from New York City to Savannah, Georgia. At this stage of the litigation plaintiff, a New York resident who purchased her ticket in New York, is unable to specify which of the defendant railroads she claims to be responsible for her injuries.

On March 14, 1967 Judge Metzner, upon plaintiff's application, signed an order of attachment authorizing the United States Marshal to "levy within his jurisdiction, at any time before final judgment, upon such property in which * * defendant [Richmond] * * * has an interest and upon such debts owing to the said defendant up to $15,000." Defendant Richmond now moves to vacate that order on the sole ground that to subject it to quasi in rem jurisdiction on the basis of an attachment of property which it may have here would constitute a denial of due process and impose an unconstitutional burden on interstate commerce. The attachment has been stayed pending the determination of this motion.

Plaintiff's efforts to obtain jurisdiction over Richmond have already been the subject of much controversy between these parties. A previous motion by Richmond to dismiss the complaint and quash out-of-state service of process on the ground that it was not amenable to in personam jurisdiction under the New York "long arm" statute, C.P.L.R. § 302, was granted by Judge Cannella in an opinion dated January 4, 1967, 269 F. Supp. 326. An appeal from the judgment of dismissal was filed, but was subsequently withdrawn. During recent months plaintiff has also made two unsuccessful attempts to attach the property of Richmond and thus obtain quasi in rem jurisdiction; one order of attachment was vacated by Judge Edelstein for procedural defects; the other was vacated by Judge Ryan for the reason that the appeal from Judge Cannella's decision was then pending.

■ (1) Prior to 1963 the federal courts had no original jurisdiction over traditional quasi in rem actions commenced by attachment or garnishment. E. g., Vestal, Expanding the Jurisdictional Reach of the Federal Courts: The 1963 Changes in Federal Rule 4, 38 N.Y.U.L. Rev. 1053, 1057 (1963). However, under Rule 4(e), F.R.Civ.P., as amended in 1963, "[w]henever a statute or rule of court of the state in which the district court is held provides * * * for service upon or notice to [a party not an inhabitant of or found within the state] to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may * * * be made under the cir-

cumstances and in the manner prescribed in the statute or rule." Thus the permissible scope of the attachment in this action must be measured by the reach of the applicable New York provisions.

■ Under N.Y.C.P.L.R. § 6202 "[a]ny debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment." And the property subject to attachment, as further defined in C.P.L.R. § 5201,[1] plainly includes the property specified in the order of attachment under attack here. E. g., Morris Plan Indust. Bank v. Gunning, 295 N.Y. 324, 67 N.E.2d 510 (1946). However, "It is axiomatic that for property or a debt to be subject to attachment under C.P.L.R. 6202 it must be amenable to the jurisdiction of the court." 7 Weinstein, Korn & Miller, New York Civil Practice § 6202.-14, at 62–56 (1966), and cases there cited. Richmond contends that in the circumstances of this case its property in New York is not amenable to the jurisdiction of this court and that the court therefore cannot assume jurisdiction over it through the attachment process.

(2) Richmond urges first that the attachment constitutes an unconstitutional burden on interstate commerce within the meaning of such cases as Denver & Rio Grande Western R.R. v. Terte, 284 U.S. 284, 52 S.Ct. 152, 76 L.Ed. 295 (1932), Michigan Central R.R. v. Mix, 278 U.S. 492, 49 S.Ct. 207, 73 L.Ed. 470 (1929), Philadelphia & Reading Ry. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710 (1917), and Bohn v. Norfolk & Western Ry., 22 F.Supp. 481 (S.D.N.Y. 1937). The error in this position is readily apparent; as Judge Rifkind

---

1. "(a) *Debt against which a money judgment may be enforced.* A money judgment may be enforced against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state, to or from a resident or non-resident, unless it is exempt from application to the satisfaction of the judgment. A debt may consist of a cause of action which could be assigned

or transferred accruing within or without the state.

(b) *Property against which a money judgment may be enforced.* A money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment. * * *."

pointed out in a case not dissimilar to the present one, the short answer to the claim that the attachment of Richmond's property is forbidden by the commerce clause is simply that "Congress may burden interstate commerce" if it so desires. Butts v. Southern Pac. Co., 69 F.Supp. 895, 896 n. 2 (S.D. N.Y.1947). In numerous instances the Supreme Court has upheld Congressional consent to state action which, if the national legislature had remained silent, might otherwise have constituted an impermissible burden on commerce. E. g., Prudential Ins. Co. v. Benjamin, 328 U.S. 408, 66 S.Ct. 1142, 90 L.Ed. 1342, 164 A. L.R. 476 (1946); Southern Pac. Co. v. State of Arizona ex rel. Sullivan, 325 U. S. 761, 769, 65 S.Ct. 1515, 89 L.Ed. 1915 (1945) (dictum); Clark Distilling Co. v. Western Maryland R. Co., 242 U.S. 311, 325–332, 37 S.Ct. 180, 61 L.Ed. 326, L.R. A.1917B, 1218 (1917). The leading case of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), upon which defendant Richmond places heavy reliance, is illustrative. There the Supreme Court in expanding the concepts of the permissible limits of state jurisdiction over non-resident business entities, summarily rejected the burden on commerce argument since Congress had authorized the states to compel employers to make payments into an unemployment fund without regard to the interstate nature of their businesses. As Justice Black emphasized in his separate opinion, "Congressional consent is an adequate answer to a claim that imposition of the tax violates the Commerce Clause." 326 U.S. at 322, 66 S.Ct. at 161.

■ In the instant case the attachment under attack is plainly authorized by Rule 4(e), F.R.C.P., promulgated with the express consent of Congress, 28 U.S.C. § 2072. For this reason the contention that the application of the state attachment practices here in issue imposes an unreasonable burden on interstate commerce is untenable; whatever interference with the flow of commerce results from the execution of the attachment is a necessary product of the vesting of original quasi in rem jurisdiction in the District Courts under Rule 4(e). It is therefore unnecessary on this motion to consider the troublesome question of the continued viability of the cases relied on by defendant Richmond in light of the expanding jurisdictional concepts heralded by *International Shoe*. Compare Butts v. Southern Pac. Co., 69 F.Supp. 895 (S.D.N.Y. 1947), with Developments in the Law: State Court Jurisdiction, 73 Harv.L.Rev. 909, 983–87 (1960).

(3) Defendant Richmond contends in the alternative that the assumption of quasi in rem jurisdiction by this court would constitute a denial of due process.

■ It is plain that Judge Cannella's decision dismissing the complaint for want of in personam jurisdiction under the New York "long arm" statute, C.P. L.R. § 302, is not dispositive of the issue posed here. Although the construction of § 302 has been generously expanded by the New York courts, that provision "has not been interpreted as extending New York's jurisdiction over non-domiciliaries as far as the United States Constitution allows." Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951, 955 (2d Cir. 1967), citing Kramer v. Vogl, 17 N. Y.2d 27, 32, 267 N.Y.S.2d 900, 904, 215 N. E.2d 159 (1966), A. Millner v. Noudar, Lda., 24 A.D.2d 326, 329, 266 N.Y.S.2d 289, 292 (1st Dept. 1966) and United States v. Montreal Trust Co., 358 F.2d 239, 242 (2d Cir. 1966). Judge Cannella's dismissal on statutory grounds was not a holding that assumption of jurisdiction over Richmond would also be barred by the federal constitution.

■ Moreover, ever since Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1877), there has been no doubt that the presence of property within a state provides a basis for that state's adjudicating any legally enforceable claim against the absent owner to the extent it can be satisfied out of the property on which jurisdiction was grounded. This traditional

form of quasi in rem jurisdiction was approved in Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905), holding that, for purposes of garnishment, jurisdiction was proper wherever the debtor or garnishee could be found. Despite the drastic expansion of the permissible limits of in personam jurisdiction—and the consequent reduction in the necessity or desirability of the quasi in rem concept, see Carrington, The Modern Utility of Quasi In Rem Jurisdiction, 76 Harv.L.Rev. 276 (1962)—there has been little in the recent developments suggesting that the long established practice of basing the exercise of jurisdiction upon the presence of property within the custody of the court has become constitutionally impermissible. E. g., Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ; Seider v. Roth, 17 N.Y.2d 111, 269 N.Y.S.2d 99, 216 N.E.2d 312 (1966) ; Great American Ins. Co. v. Louis Lesser Enterprises, Inc., 353 F.2d 997, 1006–1008 (8th Cir. 1965) ; Jones v. McNeill, 51 Misc.2d 527, 273 N.Y.S.2d 517 (Sup.Ct.1966) ; Restatement (Second), Conflict of Laws §§ 98, 107, 108 (Tent. Draft No. 4, 1957) ; von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 112, 1139–1140 (1966).

▪ Therefore on this record it cannot be argued with any persuasiveness that the attachment must be vacated on the conventional ground that it is "clearly established that the plaintiff must ultimately be defeated." American Reserve Ins. Co. v. China Ins. Co., 297 N.Y. 322, 325, 79 N.E.2d 425, 426 (1948) ; see, e. g., Jones v. McNeill, 51 Misc.2d 527, 273 N.Y.S.2d 517 (Sup.Ct.1966) ; Cocoline Chocolate Co. v. Hillside Enterprises, Inc., 45 Misc.2d 594, 257 N.Y.S.2d 444

(Sup.Ct.1965). It may be that some unfairness inheres in the notion that a mere attachment can provide a basis for jurisdiction over a cause of action unrelated to the property seized.[2] This is particularly true where, as here, it has been judicially determined that jurisdiction cannot be obtained over the person of the defendant. But on the record before me it cannot be said that the subjection of Richmond's property to the jurisdiction of this court would offend "traditional notions of fair play and substantial justice." International Shoe Co. v. State of Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 161 A.L.R. 1057 (1945), quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357 (1940). Compare Comment, Garnishment of Intangibles: Contingent Obligations and the Interstate Corporation, 67 Colum.L.Rev. 550, 569–571 (1967).

▪ Richmond predicts that dire consequences will result if this attachment is permitted to stand. But no specific property has yet been attached. The facts as to the degree of substantial interference (if any) with Richmond's duties as an interstate carrier which the attachment might cause are as yet undeveloped. If the levy under the attachment raises constitutional issues not now apparent such issues may be determined when they arise. And if there be doubt with respect to such questions, "[d]oubt is not fatal as a matter of law to the existence of an attachment * * *." Zenith Bathing Pavilion, Inc. v. Fair Oaks S.S. Corp., 240 N.Y. 307, 313, 148 N.E. 532, 534 (1925), (Cardozo, J.).

The order staying the attachment is vacated and the motion to vacate the attachment is denied.

It is so ordered.

---

2. Dunn v. Printing Corp. of America, 245 F.Supp. 875 (E.D.Pa.1965) ; Carrington, The Modern Utility of Quasi in Rem Jurisdiction, 76 Harv.L.Rev. 303, 306–309 (1962) ; B. Currie, Attachment and Garnishment in the Federal Courts, 59 Mich. L.Rev. 337, 379 (1961) ; D. Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 U.Ill.L.F. 533, 584; Hazard, A General Theory of State-Court Jurisdiction, 1965 Sup.Ct.Rev. 241, 282; von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1140–1141 (1966) ; Comment, Garnishment of Intangibles: Contingent Obligations and the Interstate Corporation, 67 Colum.L.Rev. 550, 565–567 (1967).

## MEMORANDUM

### On Motion for Reargument

Defendant Richmond has moved pursuant to Rule 9(m) of the General Rules of this court for reargument of my decision of May 16, 1967, and in the alternative for leave to pursue an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Richmond has raised no germane issue which was not fully considered in my original opinion nor has it pointed to any matters or controlling decisions which the court has overlooked. The question of whether the defense of a quasi in rem suit justifies the assumption of personal jurisdiction over the defendant, which has caused Richmond particular concern on reargument, see Defendant's Memorandum, p. 8, was plainly not before the court on the motion and was not passed upon.

The alternative application under 28 U.S.C. § 1292(b) is also denied. While the issues of law in this case may not be open and shut, I do not believe an immediate appeal by one of the three defendants here will "materially advance the ultimate termination of the litigation."

Moreover, the issues are hardly in an appropriate posture for appellate consideration. In particular, it would be exceedingly difficult for the Court of Appeals, as it was for this court in its original decision, to definitively dispose of the due process issue without knowing precisely what property of Richmond's has been subjected to attachment. There may be distinctions of constitutional dimension between the attachment of interline balances and one of Richmond's freight cars. But there are no facts presently in the record showing any undue interference with the conduct of Richmond's interstate business.

The motion for reargument, for an interlocutory appeal, and for a stay of the attachment is denied.

It is so ordered.